# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LUCIANI; PAUL LUCIANI; KATHRYN LEE; and PHILLIP LINSSEN,<br><br>Plaintiffs,<br><br>v.<br><br>MARK ANTHONY LUCIANI, an individual; LUCIANI STORAGE MANAGEMENT, LLC, a California limited liability company; SAV-ON SYSTEMS, L.P., a California limited partnership; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 10-CV-2583-JM (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Doc. No. 26 |

Plaintiffs filed the instant action alleging certain wrongful conduct by Defendants in relation to the sale of their individual security interests in a limited partnership. Plaintiffs' first amended complaint alleges five causes of action: (1) securities fraud in violation of CAL. CORP. CODE §§ 25401, 25501 & 25504; (2) securities fraud in violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Securities Exchange Act"); (3) insider trading in violation of CAL. CORP. CODE §§ 25402 & 25502; (4) fraud; and (5) breach of fiduciary duty. (Doc. No. 21, "FAC.") Defendants now bring a motion to dismiss. (Doc. No. 26.)

Pursuant to CivLR 7.1(d)(1), the court has determined this matter is appropriate for

resolution without oral argument. For the reasons set forth below, the court DENIES Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiffs Michael Luciani, Paul Luciani, Kathryn Lee, and Phillip Linssen are four individuals each of whom, prior to the events in question, owned a limited partnership interest in Defendant Sav-On Systems ("Sav-On" or the "Company"), a California company that owns certain improved real estate in San Diego County on which it operates a self-storage facility. (FAC ¶¶ 5-8 & 10.) Defendant Tony Luciani held a majority ownership interest in the Company during that same period of time. (Id. ¶ 9.) Plaintiffs allege that, before they sold their interests, they did not participate in the management of Sav-On's operations, acting merely as passive investors; rather, it was Tony Luciani, Sav-On's general partner, who held exclusive management control over the company. (Id. ¶ 12 & 17.) Before becoming general partner in the beginning of 2008, Tony Luciani had been the sole managing partner of Sav-On since November 2005, and operating manager for more than twenty years prior to that. (Id. ¶ 17.)

On or around March 21, 2008, Tony Luciani directed Sav-On to file a complaint in San Diego County Superior Court seeking dissolution of the limited partnership. (Id. ¶ 20.) According to Plaintiffs, Tony Luciani did so with the knowledge that, of all of Sav-On's owners, he alone had the financial resources to purchase the partnership's assets, such that if the dissolution proceeding ended in a forced sale of the Company, he would be able to submit a "'low ball' bid" for Plaintiffs' interests and set the price at "an artificially low level" for his own benefit. (Id. ¶ 21.)

The FAC alleges that, in the months following the filing of the complaint seeking dissolution, "Tony Luciani made or caused to be made various statements to [] Plaintiffs concerning the value of the partnership's assets and the value of the limited partners' interests." (Id. ¶ 22.) In particular, Plaintiffs identify three separate communications in which Tony Luciani allegedly made false representations about the value of Plaintiffs' holdings: The first was a letter dated December 19, 2008, in which Tony Luciani, through his attorneys, gave Plaintiffs a detailed analysis of Sav-On's fair market value, concluding in a low valuation of

the limited partners' assets. (Id. ¶ 23.) On or around the same date, Tony Luciani's attorneys also delivered to Plaintiffs a document entitled "Background & Analysis Re Value," a report which stated that, due to the current economic situation, the value of their assets was lower than it had been historically. (Id. ¶ 24.) Both these documents purported to value Sav-On based on its expected future profits from operation of the self-storage business, and neither addressed the possibility of a sale of a portion of the Company's land. (Id. ¶¶ 23-24.) Finally, in a letter dated January 12, 2009, Tony Luciani's attorneys also conveyed to Plaintiffs that Tony Luciani was a "distressed buyer," and that the value they could expect to receive for the sale of the Sav-On assets was severely constrained by Tony Luciani's limited ability to pay. (Id. ¶¶ 25-26.) Plaintiffs allege that the combined effect of these communications was to "cast Sav-On [] and its assets in the worst possible light," and, when combined with the threat of a forced court sale of the partnership's assets, to induce Plaintiffs to sell their partnership interests to Tony Luciani at "distressed values." (Id. ¶¶ 27-28.)

However, in reality, according to Plaintiffs, Tony Luciani knew that the Sav-On assets were worth far more than what he had represented to them. Shortly before Tony Luciani filed the lawsuit for dissolution, he had been in contact with the San Diego Metropolitan Transit Service ("MTS"), which had expressed interest in purchasing a 2.43-acre portion of the property owned by Sav-On (the "Irongate Property"). (Id. ¶ 29.) Plaintiffs claim they knew nothing of the discussions between Tony Luciani and MTS prior to agreeing to sell him their shares. (Id.) Instead, after completing his purchase of Plaintiffs' partnership interests, Tony Luciani sold the Property to MTS for a large profit, at a rate that implied a valuation of Plaintiffs' interests that was more than double what Tony Luciani had said they were worth. (Id. ¶ 30.) According to Plaintiffs, they did not discover Tony Luciani's earlier 2008 negotiations with MTS until April 2010. (Id. ¶ 31.)

On November 17, 2010, Plaintiffs brought suit against Defendants in California Superior Court. (Doc. No. 1 p.1.) In addition to Tony Luciani and Sav-On, the Complaint names Luciani Storage Management, LLC ("LSM"), a California limited liability company, as a defendant. Plaintiffs allege that LSM was created by Tony Luciani "for the purpose of

1  becoming the new General Partner of [Sav-On] effective immediately after Tony Luciani
2  fraudulently induced Plaintiffs to sell him all of their limited partnership interests." (FAC
3  ¶ 11.) Defendants removed the action to federal court on December 15, 2010, citing federal
4  question jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claim for Securities Exchange
5  Act violations (Doc. No. 1 p.2), and then successfully moved to dismiss that claim on the
6  grounds that it was inadequately pled under the Private Securities Litigation Reform Act of
7  1995 ("PSLRA") (Doc. No. 19). Plaintiffs subsequently filed the FAC, which Defendants now
8  move to dismiss in its entirety. (Doc. No. 26.) Plaintiffs have filed objections to Defendants'
9  motion. (Doc. No. 29.)

## II.   LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of the pleadings. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). While Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

## III.   DISCUSSION

Defendants make three arguments for dismissal of the FAC: (1) because Plaintiffs waived their claims in a prior settlement agreement; (2) because Defendants could not have set "an artificially low price" on Plaintiffs' assets as a matter of law; and (3) because Plaintiffs' amended complaint fails to cure the PSLRA pleading defects identified by the court in granting the first motion to dismiss.

//

### A.   Waiver/Release of Claims

As part of the resolution of the Sav-On dissolution action, the parties executed a settlement agreement whereby Plaintiffs sold their interests in Sav-On to Tony Luciani for an agreed-upon amount in exchange for the filing of a dismissal of the action with prejudice. (Doc. No. 26 Exh. B, "Settlement Agreement," ¶¶ 4-7, 10.) In addition, the agreement stated the parties' intent

> to settle and discharge any and all claims, controversies, and demands they have or may have related to or arising out of Sav-On including, but not limited to, any and all claims which could have been asserted in the Action and any and all claims known or unknown which relate or pertain to Sav-On.

(Id. ¶ 3.) To that end, the agreement included the following provisions:

> E.   MUTUAL GENERAL RELEASE
>
> 13.   Subject to the rights and obligations created by this Agreement . . . each of the Parties . . . releases the others . . . from any and all actions, causes of action, obligations, costs, expenses, attorney's fees, damages, losses, claims, liabilities and demands whatsoever, **known and unknown, suspected and unsuspected, disclosed and undisclosed**, arising out of or in any way related to the agreements, acts or conduct of the Parties, and each of them, arising out of or related to Sav-On, occurring at any time prior to date [*sic*] this Agreement is signed by all Parties.
>
> F.   WAIVER OF CIVIL CODE §1542
>
> 14.   The Parties represent and warrant that they have been fully advised of the content and meaning of § 1542 of the California Civil Code which reads as follows:
>
>> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."
>
> ***The Parties waive and relinquish all rights and benefits under § 1542*** and any law or legal principle of similar effect in any jurisdiction with respect to the release in this Agreement.

(Id. ¶¶ 13-14 (emphasis added).) Defendants now argue that these provisions release them from liability on any cause of action brought by Plaintiffs in their FAC. (Doc. No. 26-1 pp. 4-9.)

Defendants rely on two Ninth Circuit cases, Petro-Ventures, Inc. v. Takessian and Facebook, Inc. v. Pac. Nw.Software, Inc., for the proposition that a broad release, signed by parties of equal bargaining strength who are represented by counsel, is valid even as to claims

1  unknown to the parties at the time of signing. In Petro-Ventures, the parties filed countersuits
2  against one another based on a deal to exchange certain properties owned by the plaintiff for
3  a partnership interest in the defendant. 967 F.2d 1337, 1338 (9th Cir. 1992). They thereafter
4  entered into a settlement agreement, which contained an express waiver of the protections of
5  CAL. CIV. CODE § 1542 similar to the one found in this case. Id. The Ninth Circuit held that
6  the agreement was valid to waive the plaintiff's federal securities law claims, even though they
7  were based on alleged misrepresentations and omissions that were unknown to the plaintiff at
8  the time it signed the release. Id. at 1339, 1342-43. The Court held that the release, "signed in
9  a commercial context by parties in a roughly equivalent bargaining position and with ready
10 access to counsel," was "unambiguous in conveying the intent of the parties to release all
11 unknown claims" and should therefore be enforced. Id. at 1342 (quoting Locafrance U.S. Corp.
12 v. Intermodal Sys. Leasing, Inc., 558 F.2d 1113, 1115 (2d Cir. 1977)) (internal quotation marks
13 omitted). More recently, the Court applied its holding in Petro-Ventures to enforce a settlement
14 agreement in Facebook. There, the Court found that the parties had "agreed to grant each other
15 'mutual releases as broad as possible,'" such that the plaintiffs were prohibited from bringing
16 a subsequent action for federal securities fraud. 640 F.3d 1034, 1037, 1040 (9th Cir. 2011).

17       It is true that the settlement agreement here is unambiguously worded as to the parties'
18 intent to effect a broad release of all claims, including those unknown to the parties at the time
19 of signing. However, Petro-Ventures and Facebook do not mandate the enforcement of the
20 agreement for two reasons. First, with regard to Plaintiffs' four state law causes of action,
21 Petro-Ventures and Facebook are not controlling because they are both explicitly limited to
22 release of *federal* securities fraud claims. See Petro-Ventures, 967 F.2d at 1340 ("[W]here
23 violations of both federal and state securities law are alleged, '[i]t is well established that
24 federal law governs all questions relating to the validity of and defenses to purported releases
25 of federal statutory causes of action.'" (quoting Locafrance, 558 F.2d at 1115)).

26       Second, both cases cited by Defendants are distinguishable on their facts. The Petro-
27 Ventures Court appears to have relied on several factors in enforcing the release there,
28 including its findings that the parties were (1) in a strictly business or commercial relationship

1  with one another, (2) in "roughly equivalent bargaining position[s]," (3) "acting in the
2  adversarial setting that is characteristic of litigation," and (4) represented by counsel. 967 F.2d
3  at 1341-42. By contrast, although Plaintiffs here were represented by counsel at the time they
4  entered into the settlement agreement, none of the other key factors are present. Plaintiffs are
5  all closely related to Tony Luciani, such that it is highly unlikely that the parties had a
6  traditional arm's-length business relationship. (Doc. No. 29 p.6.) Furthermore, as Tony Luciani
7  was the majority owner of Sav-On and exercised exclusive control over the Company's
8  operations, he stood in a position of considerably greater bargaining power than Plaintiffs. See
9  Neubauer v. Goldfarb, 108 Cal. App. 4th 47, 56-57 (2003) ("[I]n cases such as this involving
10 the buyout of minority shareholders in a private close corporation, the controlling shareholders
11 possess a decisive advantage of bargaining strength."). Finally, although the settlement
12 agreement was ostensibly drafted by the parties in order to resolve an ongoing litigation, the
13 suit then-pending was one for dissolution of a partnership *filed by Sav-On* (via Tony Luciani),
14 and not an action brought by Plaintiffs based on already-raised suspicions of securities fraud.
15 In other words, the mere fact that a lawsuit had been filed was not itself an indication to
16 Plaintiffs that claims in their favor might exist—claims that they were waiving by signing the
17 settlement agreement. Indeed, the Facebook Court justified the holding in Petro-Ventures by
18 citing to the inherently antagonistic relationship between parties already engaged in a lawsuit
19 in which one party is alleged to have committed some wrong against the other:

> Parties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations. They can use discovery to ferret out a great deal of information before even commencing settlement negotiations. They can further protect themselves by requiring that the adverse party supply the needed information, or provide specific representations and warranties as a condition of signing the settlement agreement. Such parties stand on very different footing from those who enter into an investment relationship in the open market, where it's reasonable to presume candor and fair dealing . . . .

25 640 F.3d at 1039. Thus, although Plaintiffs were indeed parties to a lawsuit with Sav-On at the
26 time they signed the release in question, based on the nature of the suit itself, the pre-existing
27 relationship between the parties, and the fact that Plaintiffs had not originated the action,
28 Plaintiffs had no reason to employ the discovery devices at their disposal to "ferret out"

evidence of Defendants' fraud before they entered into the settlement.

The Facebook Court also made it clear that its holding was narrowly limited to the facts before it, which differ significantly from Plaintiffs' current situation:

> The [plaintiffs] are sophisticated parties who were locked in a contentious struggle over ownership rights in one of the world's fastest-growing companies. They engaged in discovery, which gave them access to a good deal of information about their opponents. They brought half-a-dozen lawyers to the mediation. [The plaintiffs' father], a former accounting professor at Wharton School of Business and an expert in valuation, also participated. A party seeking to rescind a settlement agreement by claiming a Rule 10b-5 violation under these circumstances faces a steep uphill battle.

Id. For the same reasons described above, the circumstances under which Plaintiffs signed the release render the holding in Facebook inapplicable here.

Plaintiffs argue that, under California law, they cannot have waived any claims arising from a breach of fiduciary duty—here, Tony Luciani's failure to disclose his ongoing negotiations with MTS for the sale of the Irongate Property—because such waiver would violate CAL. CIV. CODE § 1668, which prohibits contracts "which have for their object . . . to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law." (Doc. No. 29 p.5.) Plaintiffs cite to a California Court of Appeal case, Neubauer v. Goldfarb, which holds that "breach of fiduciary duty constitutes a 'willful injury to the . . . property of another' under Civil Code section 1668 and therefore cannot be contractually excused." (Id.) However, Plaintiffs overlook the fact that the contracts referred to in § 1668 are those that relate to the release of liability for *future* wrongdoing. Watkins v. Wachovia Corp., 172 Cal. App. 4th 1576, 1587 n.2 (2009) ("[CAL. CIV. CODE § 1668] is meant to prohibit contracts releasing liability for future torts not to prohibit settlements of disputes relating to past conduct."). This is the most sensible reading of the code provision, since the interpretation advanced by Plaintiffs would invalidate almost all settlement agreements that included some waiver of liability for a "violation of law."

However, Plaintiffs have also pointed out a line of cases that hint at an exception to the enforcement of liability waivers where the waiver is procured in part because of a fiduciary's failure to disclose some material fact. In Fisher v. Penn. Life Co., the Court of Appeal found

that the plaintiff was entitled to rescind his agreement with the defendant, which contained a broad release including a § 1542 waiver, because the defendant fraudulently concealed certain information that it was obligated to reveal to the plaintiff prior to the signing of that agreement. 69 Cal. App. 3d 506, 511-13 (1977). The Ninth Circuit confirmed the reasoning of Fisher in a later case, Brae Transp., Inc. v. Coopers & Lybrand. The Court, in enforcing the release between the parties, distinguished Fisher from the situation then before it on the grounds that "[t]he defendant in Fisher owed a fiduciary duty to the plaintiff." 790 F.2d 1439, 1445 (9th Cir. 1986). This reasoning appears to be in line with other California cases, which have held that fraud in the inducement of an agreement that includes a waiver of liability invalidates that waiver. See, e.g., Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1154 (2005) ("[A] party who was fraudulently induced to contract to sell shares cannot be deprived of the well-recognized option to affirm the contract and sue for damages for fraud simply because the contract contained a mutual release of unknown claims."); McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 794 (2008) ("A party to a contract who has been guilty of fraud in its inducement cannot absolve himself or herself from the effects of his or her fraud by any stipulation in the contract, either that no representations have been made, or that any right that might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, *including the waiver provision*."(original emphasis)); see also San Diego Hospice v. County of San Diego, 31 Cal. App. 4th 1048, 1055 n.2 (1995) (referring to a line of cases in which fraud permits a party to avoid a release because "the release was obtained by a fiduciary without full disclosure of the relevant facts").

Plaintiffs assert, and Defendants do not deny, that Tony Luciani, as general partner of Sav-On, owed a fiduciary duty to Plaintiffs, his limited partners. (Doc. No. 30 pp. 3-4.) Furthermore, the information that Defendants are alleged to have concealed from Plaintiffs—namely, that Tony Luciani was in the midst of negotiations with MTS to sell the Irongate Property for an amount that implied a much higher valuation of the Sav-On assets than Tony Luciani had represented to Plaintiffs—was certainly information that would have

been material to the sale of Plaintiffs' interests in Sav-On, and would have affected Plaintiffs' decision to sign the settlement agreement.[1] Therefore, Plaintiffs have alleged facts sufficient to overcome the waiver provision of the settlement agreement.

### B.     Pricing of Sav-On Assets

Defendants also argue that, because California courts supervise the sale and distribution of a partnership's assets upon dissolution, Plaintiffs cannot allege that such a process would have resulted in an artificially low price on the Sav-On assets. (Doc. No. 26-1 p.10.) However, Defendants overlook the fact that, since the first motion to dismiss was granted, Plaintiffs have amended their complaint to delete their prior reference to a potential court-ordered sale of Sav-On. The original complaint stated:

> Upon information and belief, Tony Luciani and his advisors knew that filing a lawsuit seeking dissolution of the partnership at that time meant that if the limited partners did not voluntarily sell their interests to Tony Luciani, then the court procedure would result in establishing an artificially low, "distressed value" for the partnership's assets and the Plaintiffs' partnership interests.

(Doc. No. 1 Exh. A ¶ 21.) However, Plaintiffs removed this allegation from their amended complaint, now claiming only that their assets would have been undervalued had Tony Luciani—the only viable bidder—been permitted to buy them at auction. (FAC ¶ 21.) Therefore, for purposes of Plaintiffs' claims as they are currently pled, it is irrelevant whether the process by which the court administers the sale process is fair, as Defendants attempt to show.

### C.     Failure to Cure Pleading Defects

Finally, Defendants argue that Plaintiffs have failed to cure the pleading defects identified by the court in its order granting Defendants' first motion to dismiss. (Doc. No. 26-1 pp. 12-13.) The court previously found that Plaintiffs' original complaint failed to meet the more "[e]xacting pleading requirements" of the PSLRA in two ways: First, although the

---

[1] Defendants attempt to distinguish the allegedly concealed information here as "a speculative possibility of a future transaction," as opposed to "an already-completed transaction." (Doc. No. 30 p.5.) However, whether or not the transaction was complete does not necessarily affect whether the information would have been "material" to Plaintiffs. Here, where Plaintiffs were attempting to understand the actual value of their holdings in Sav-On, the possibility of an imminent sale of a parcel of Sav-On's property for a certain price would almost certainly have had an impact on Plaintiffs' calculations.

complaint made several allegations based on the Plaintiffs' "information and belief," Plaintiffs did not state "the relevant facts forming the basis of [their] belief." (Doc. No. 19 pp. 5-6.) Second, although Plaintiffs described three separate documents that were the supposedly the source of Defendants' misleading statements—namely, the December 19, 2008 letter; the December 19, 2008 report; and the January 12, 2009 letter—Plaintiffs did not identify the individual statements within those documents that were allegedly misleading. (Id. at p.6.) According to Defendants, Plaintiffs' FAC continues to commit these same errors, and therefore should be dismissed without leave to amend.

Plaintiffs' original complaint contained two separate statements that were supposedly based on Plaintiffs' "information and belief." One has since been deleted from the FAC; the other has been somewhat revised, and now reads:

> At [the time that the dissolution action was filed], none of the Plaintiffs had the financial resources to purchase the partnership's property and assets at the inevitable forced sale in the court proceeding. Tony Luciani knew that he (but none of the Plaintiffs) had the financial ability to purchase the partnership's property and assets. If the proceeding had proceeded to a sale, Tony Luciani would have been able to "low ball" bid to set the limited partners' interests and their payout from the sale at an artificially low level, benefiting Tony Luciani but not Plaintiffs.[2]

(FAC ¶ 21.) First, it must be noted that the FAC has removed the qualification that this allegation is "[b]ased on information and belief." This minor modification alone is not sufficient to exempt this claim from the requirements of 15 U.S.C. § 78u-4(b)(1); however, the other changes to the FAC—namely, deleting the allegation that the filing of the dissolution action itself constituted some form of misleading or false statement—affect whether the PSLRA's heightened pleading requirements still apply to this claim. Section 78u-4(b)(1) provides in pertinent part: "[I]f an allegation regarding [an allegedly misleading] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Defendants argue that Plaintiffs' FAC should be dismissed

---

[2] The allegation in the original complaint read: "Based upon information and belief, Tony Luciani and his advisors and attorneys knew that none of the partners except Tony Luciani would be able to bid on the property at the inevitable forced sale in the court proceeding and that Tony Luciani would be able to 'low ball' bid to set the limited partners' interests and payout from the sale at an artificially low level, benefiting Tony Luciani but not the Plaintiffs." (Doc. No. 1 Exh. A ¶ 22.)

because "Plaintiffs still have not provided any particular facts concerning what Tony Luciani and his advisors/attorneys knew; why or how dissolution litigation would or could create a 'distressed value'; and why no one but Tony Luciani would be able to bid at any sale." (Doc. No. 26-1 p.13.) However, these facts are no longer relevant to Plaintiffs' securities fraud claims, which are now based only on the three documents containing misleading statements about Sav-On's valuation. Therefore, § 78u-4(b)(1) no longer applies to this allegation.

Defendants also argue that the FAC fails to identify the individual statements within those three documents that Plaintiffs claim were false or misleading. However, this is not entirely correct. Compared to the original complaint, the FAC provides significantly greater detail regarding the letters and reports allegedly sent by Tony Luciani to Plaintiffs, and which Plaintiffs claim were designed to convey a generally negative outlook on Sav-On's valuation and future prospects. Although Plaintiffs once again do not quote specifically from those documents, they do allege that both the December 19, 2008 letter and the Background & Analysis Re Value report "focused exclusively upon valuing the partnership's assets as an operating business and not as a seller of any real estate assets," and that both failed to disclose or discuss the impact on valuation that would result from "the one-time inflow of cash . . . as a result of the sale of part of its land." (FAC ¶¶ 23-24.) In addition, in repeating their allegation that Tony Luciani's January 12, 2009 letter "portray[ed] him[] as a distressed buyer, with a very limited ability to pay," Plaintiffs also explain that these statements were misleading because, at the time they were made, Tony Luciani "knew (but did not disclose) that he would have a much greater ability to pay" after the sale of the Irongate Property was completed. (Id. ¶¶ 25-26.) Thus, these new allegations do appear to provide enough information to permit Defendants to identify both which portions of the documents Plaintiffs believed were misleading as well as why they were misleading, as required by § 78u-4(b)(1).[3]

//

---

[3] It could be argued that § 78u-4(b)(1), which requires Plaintiffs to "specify *each statement* alleged to have been misleading," mandates that Plaintiffs actually quote verbatim from the documents themselves. However, given that Plaintiffs have provided a fairly narrow description that should permit Defendants to identify the statements in question with relative ease, enforcing such an exacting requirement would serve no practical purpose.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Defendants' motion to dismiss. Defendants are ordered to file an answer to the FAC within fourteen (14) days of the issuance of this order.

**IT IS SO ORDERED.**

DATED: September 1, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge