UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LUCIANI; PAUL LUCIANI; KATHRYN LEE; and PHILLIP LINSSEN,<br><br>Plaintiffs<br><br>v.<br><br>MARK ANTHONY LUCIANI, an individual; LUCIANI STORAGE MANAGEMENT, LLC, a California limited liability company; SAV-ON SYSTEMS, L.P., a California limited partnership; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:10-CV-2583-JM (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT** |

On November 17, 2010, Michael Luciani, Paul Luciani, Kathryn Lee, and Phillip Linssen ("Plaintiffs") filed a complaint against Mark Anthony Luciani ("Tony Luciani"), Luciani Storage Management, LLC ("LSM"), a California limited liability company, and Sav-On Systems, L.P. ("Sav-On"), a California limited partnership ("Defendants") in the Superior Court for the State of California, San Diego ("Superior Court").

On December 15, 2010, Defendants removed the action to federal court citing federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' second claim encompassed § 10(b) and Rule 10b-5 of the Securities Exchange Act. Dkt. 1 at 2. This court dismissed this initial complaint, due to pleading defects under the Private Securities Litigation Reform Act of 1995. Specifically, this court noted that Plaintiffs (1) made several allegations based on "information and belief" without stating the relevant facts that formed that belief and (2) Plaintiffs did not identify allegedly misleading individual statements within those documents.

After Plaintiffs filed an amended complaint ("FAC") alleging the same causes of action, Defendants again sought to dismiss the FAC on the same grounds that this court dismissed the original complaint. But on September 1, 2011, this court denied Defendants' motion to dismiss the FAC, noting in part that Plaintiffs' claims were no longer deficient under PSLRA.[1] Defendants later filed an answer to the amended complaint on September 20, 2011.

On August 31, 2012, Defendants filed a motion for summary judgment ("MSJ"), summary adjudication of claims, and ascertainment of material facts without substantial controversy. For the following reasons, Defendants' motion for summary judgment is DENIED.

I.  **Background**

On March 23, 2009, in an agreement retroactively dated effective on December 31, 2008, Defendant Tony Luciani purchased Plaintiffs' limited partnership interests in Defendant Sav-On, a company that owns and operates a self-storage facility in San Diego County ("Sav-On"). Opposition to Summary Judgment ("OSJ") at 2. He then owned and continues to own 100% of

---

[1] The FAC included significantly greater detail regarding the letters and reports allegedly sent by Tony Luciani that were designed to create a negative outlook on Sav-On's valuation and future prospects that resolved the original complaint's deficiencies. For example, Plaintiffs explained that the December 19, 2008 letter and Background and Analysis Re Value report exclusively valued the partnership's assets based on its operating business and not as a seller of real estate assets. FAC ¶¶23-24. In addition to repeating their allegation that Tony Luciani's January 12, 2009 letter portrayed him as distressed buyer whose ability to pay would be limited, Plaintiffs also explained that the statements were misleading because Tony Luciani knew but failed to disclose that he would have a greater ability to pay after the Irongate Property was sold. Id. ¶¶25-26.

2

1    Sav-On. FAC ¶ 2. Plaintiffs, Tony Luciani's two brothers, a sister, and a more distant relative,
2    claim Tony Luciani defrauded them by inducing them to sell their interests to him for less than
3    their true value. Id. ¶ 4; OSJ at 2.

4    Prior to purchasing Plaintiffs' partnership interests, Tony Luciani held a majority
5    ownership interest in Sav-On, controlling 71.31% of Sav-On. FAC ¶ 9; OSJ at 2. In 2006, he
6    became the general partner and majority limited partner. OSJ at 2. Plaintiffs claim to have been
7    exclusively passive investors while Tony Luciani managed and controlled Sav-On. FAC ¶¶ 12,
8    17.

9    On or around March 21, 2008, Tony Luciani directed Sav-On to initiate formal
10   dissolution proceedings in Superior Court ("Dissolution"). FAC ¶ 20; OSJ at 2. According to
11   Plaintiffs, Tony Luciani also allegedly planned to submit a "'low ball' bid" for Plaintiffs'
12   interests and set the price at "an artificially low level" if the Dissolution ended in a forced sale of
13   Sav-On. Id. ¶ 21. He knew that only he had financial resources to purchase the partnership's
14   assets. Id. ¶ 22.

15   Plaintiffs identify three separate communications in which Tony Luciani allegedly made
16   false representations concerning the value of Plaintiffs' holdings after he filed for Dissolution.
17   Id. ¶ 22. First, in a letter dated December 19, 2008, Tony Luciani's attorneys presented Plaintiffs
18   with a detailed analysis of Sav-On's fair market value, concluding in a low valuation. Id. ¶ 23.
19   Second, around the same date, Tony Luciani's attorneys presented Plaintiffs with a document
20   entitled "Background & Analysis Re Value," which valued their assets at a historically low
21   figure due to the then current economic situation. Id. ¶ 24. Both documents valued Sav-On
22   based on its expected future profits from operation of the self-storage business without
23   contemplating the possibility of selling a portion of Sav-On's land. Id. ¶¶ 23-24. Third, in a
24   January 12, 2009 letter, Tony Luciani's attorneys informed Plaintiffs that Tony Luciani was a
25   "distressed buyer" whose limited ability to pay severely constrained the value they could expect

to receive for the Sav-On assets.  Id. ¶¶ 25-26.  The combined effect of these communications allegedly "cast Sav-On [] and its assets in the worst possible light," and, when combined with the threat of a forced court sale of the partnership's assets, induced Plaintiffs to sell their partnership interests to Tony Luciani at "distressed values."  Id. ¶¶ 27-28.

Plaintiffs claim that Tony Luciani knew the Sav-On assets to be worth far more than he represented.  OSJ at 2.  Shortly before Tony Luciani filed for Dissolution, the San Diego Metropolitan Transit Service ("MTS") had expressed interest in purchasing a 2.43-acre portion of the property owned by Sav-On (the "Irongate Property").  FAC ¶ 29.  Tony Luciani obtained a firm commitment from MTS to purchase the Irongate Property from the partnership six weeks before he purchased Plaintiffs' partnership interests.  OSJ at 3.  Plaintiffs claim they were unaware of parallel negotiations between Tony Luciani and MTS prior to agreeing to sell him their shares.  Id.

Tony Luciani purchased Plaintiffs' partnership interests with cash and promissory notes pursuant to the Dissolution settlement agreement.  Id. at 2.  After purchasing Plaintiffs' partnership interests, Tony Luciani sold the Irongate Property to MTS for approximately twice the value that Tony Luciani had claimed the interests were worth.  FAC ¶ 30.

After the sale, Toni Luciani formed LSM "for the purpose of becoming the new General Partner of [Sav-On] effective immediately after Tony Luciani fraudulently induced Plaintiffs to sell him all of their limited partnership interests."  Id. ¶¶ 11, 31.  Plaintiffs discovered Tony Luciani's earlier 2008 negotiations with MTS in April, 2010. Id. ¶ 31.

Plaintiffs filed suit on November 17, 2010, seeking damages and rescission on their Claims.  FAC ¶¶ 4, 42, 55, 60.  Plaintiff brought five causes of action: (1) violation of California Corporations Codes §§ 25401, 25501, and 25504 ("California Securities Fraud"); (2) violation of Securities and Exchange Act § 10(b) ("§ 10(b)") and Rule 10b-5 ("Federal Securities Fraud");

(3) violation of California Corporations §§ 25402 and 25502 ("California Insider Trading"); (4) fraud by a fiduciary; and (5) breach of fiduciary duty.

Defendants now seek summary judgment, summary adjudication of claims, and ascertainment of material facts without substantial controversy on the claims solely because Plaintiffs should be limited to and did not suffer out-of-pocket damages as a result of the alleged fraudulent nondisclosures. MSJ at 8. Defendants' expert witness, Mr. Wallace, submitted evidence that Plaintiffs received more for their limited partnership interests than they were worth at the time of the sale. OMF at 5. Mr. Wallace valued Sav-On at $3.4 million, meaning that Plaintiffs received "more than the fair market value of their interests when they were paid $45,000 per one percent interest." OMF at 5.

Plaintiffs' expert, Mr. Schenk, testified that the value of Plaintiffs' interests in Sav-On at the time of sale exceeded the price paid by Tony Luciani. Schenk Decl. ¶¶ 2 & 3. Mr. Schenk characterized the partnership's two assets at the time of sale as the Irongate Property and the operational Sav-On Self Storage business. Id. Proceeds to Tony Luciani from the Irongate Property totaled $8.3 million, based on a Superior Court Order fixing the land sale value to Tony Luciani. OSJ at 3,7. The value of the ongoing Sav-On operation totaled $2,430,000, based on historic ongoing operation figures. Schenk Decl. ¶3. Plaintiffs did not receive their 28.69% interest in the two Sav-On assets, which made their real interests worth $3,078,437. Schenk Decl. ¶¶ 2, 3; Schenk's Rpt. at 5. Mr. Schenk valued Plaintiffs' economic loss as the difference between the true value of the partnership interests ($3,078,437) and the value Tony Luciani paid Plaintiffs ($1,291,050). Id. The difference of $1,787,387 specified Plaintiffs' damages, excluding pre-judgment interest. Id. Plaintiffs argue that the motion for summary judgment should be denied because they suffered economic loss. OSJ at 14.

**II. Legal Standard**

A moving party is entitled to summary judgment where "there is no genuine issue as to any material fact . . . ." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). While Rule 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), "the moving party bears the burden of proof at trial, [and] it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets its initial burden of production, the burden shifts to the non-moving party to go beyond the pleadings by citing materials in the record to show a genuine issue for trial. Celotex, 477 U.S.at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Nevertheless, the ultimate burden of persuasion on the motion remains with the moving party. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Summary judgment should be denied if an expert demonstrates his competence and his testimony supports the non-moving party's case with detailed facts and figures. In Re Apple Securities Litig, 888 F.2d 1109, 1116 (9th Cir. 1989); McGlinchy v. Shell Chemical Co., 845 F.2d 802, 806-08 (9th Cir. 1968). The credibility and methodology of conflicting expert witness testimony present jury questions. Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910, 919 (2001) (allowing expert testimony calculating lost profits as an estimate if supported by substantial evidence); Wyler Summit P'ship v. Turner Broad Sys., Inc., 235 F.3d 1184, 1192

(9th Cir. 2000); Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc. 733 F.2d 1506, 1513 (1985) (holding that for summary judgment purposes an expert relying on a survey that a jury might not find reliable provided sufficient evidence of an injury amount).

**III.   Discussion**

When asserting that the Defendants engaged in California Securities Fraud,[2] Federal Securities Fraud,[3] California Insider Trading,[4] fraud by a fiduciary,[5] and breach of fiduciary duty,[6] Plaintiffs are required to demonstrate that they suffered damages. Parties may use experts to ascertain these damages. Damages are speculative if the plaintiff's sole evidence of damages is flawed in a way that cannot be remedied at trial. City of Vernon v. Southern Cal. Edison Co., 955 F. 2d 1361, 1372 (9th Cir. 1992). For example, In re Imperial Credit Indus. Sec. Litig., 252 F. Supp. 2d 1005 (C.D. Cal. 2003), held that a the plaintiff's accounting expert was irreparably flawed because he failed to perform an event study to remove the effects of market and industry information on stock price, did not challenge the event study performed by defendants' expert, and relied upon incomplete excerpts from a report authored by a different expert. Id. at 1014-15. In granting summary judgment to the defendant, the court noted the "importance and centrality of the event study methodology in determining damages in securities cases." Id.

---

[2] To prove California Securities Fraud, a plaintiff must show that defendant engaged in a material misrepresentation or omission of fact, with scienter, in connection with the purchase or sale of a security, and economic loss. CAL. CORP. CODE §§ 25401, 25501.

[3] A private plaintiff alleging Federal Securities Fraud must prove material misrepresentation or omission of fact, scienter, a connection with the purchase or sale of a security, reliance, loss causation, and (6) damages. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 338 (2005).

[4] To prove California Insider Trading, a plaintiff must show that defendant purchased or sold a security, relied on material, non-public information gained from a relationship with the issuer, and caused economic loss. CAL. CORP. CODE §§ 25402, 25404, 25502.

[5] Fraud requires a plaintiff to show that there was a misrepresentation, scienter (knowledge of falsity), intent to defraud, justifiable reliance, and resulting damages. Seeger v. Odell, 18 Cal. 4d 409 (1941).

[6] The elements for breach of fiduciary duty are a fiduciary relationship, breach, and resulting damage. Amtower v. Photon Dynamics, Inc., 158 Cal. App. 4th 1582 (6th Dist. 2008); Mendoza v. Rast Produce Co. Inc., 140 Cal. App. 4th 1395 (2006).

Defendants argue that Plaintiffs failed to provide admissible evidence of damages because no evidence has been presented that Plaintiffs would have been "better off" if they had still been limited partners when the Irongate Property was sold. Defendants also note that Plaintiffs could not demonstrate that any of the Irongate Property's sale proceeds would have actually gone to or been allocated to them if they had retained their partnership interests. Defendants' MSJ at 4. But this argument that Plaintiffs cannot demonstrate the difference between the securities' purchase price and market value is problematic because Defendants appear to rely on these securities' illiquidity. That the securities are not readily traded on the market does not matter. Otherwise, no cause of action for securities fraud could ever be brought for transactions involving illiquid securities. An economic valuation suffices for illiquid securities in place of market activity: it can be tested, is generally accepted within the accounting community, and should reach reliable results if properly executed.

Plaintiffs counter that they retained Mr. Schenk, an Accredited Senior Appraiser and a Certified Insolvency and Restructuring Advisor with the requisite background in accounting, to perform an economic valuation assessing damages and testify accordingly. Mr. Schenk arrived at concrete economic loss figures derived from specific facts characterizing the nature of Sav-On and its assets, consistent with other evidence in the record. Plaintiffs provided Mr. Schenk's declaration and an excerpt of his report ("Schenk's Rpt.") to the court in opposition to this motion by Defendants for summary judgment. Mr. Schenk reports that Sav-On generated combined revenues ranging from $1,553,581 to $1,701,175 from its self-storage business for 2007 to 2009. Schenk's Rpt. at 5. The Irongate facility accounted for approximately 46% of total revenues, while the ongoing business accounted for 54% of total revenues. Id. Mr. Schenk apportioned Plaintiffs' 28.69% interest attributable to the Sav-On parcel still in operation by applying the 54% revenue allocation to the $4,500,000 purchase price to arrive at a value of $2,430,000. Id. He assigned a $697,167 value to Plaintiffs' 28.69% interest in the ongoing

Sav-On operations. Id.  After adding Plaintiffs' 28.69% interest in the two Sav-On assets to arrive at a figure of $3,078,437 and deducting from that the value that Tony Luciani paid Plaintiffs, he arrived at an economic loss figure of $1,787,387. Id. Unlike the accounting expert in Imperial Credit, who did not challenge the event study performed by defendants' expert, Mr. Schenk also challenges Mr. Wallace's economic loss figures. Plaintiffs argue that the validity of this aforementioned report and Mr. Schenk's credibility are issues for the jury to decide. Plaintiff OSJ at 8-9.

As Plaintiffs submitted such an economic valuation, this analysis turns on whether Plaintiffs' economic valuation is admissible and, if so, whether the economic valuation provides sufficient evidence of damages for the Plaintiffs' action to survive summary judgment. District courts, entitled to broad discretion as evidentiary gatekeepers, determine what expert testimony is relevant, reliable and helpful to the jury. Kumho Tire Co. v. Carmichael, 526 US. 137, 147 (1999); Derosiers v. Flight Int'l of Florida Inc., 156 F. 3d 952, 961 (9th Cir. 1998). A court may consider one or more factors such as the testability of the expert's theory, whether it has been peer reviewed or published, its rate of error, standards governing its operation, and its level of acceptance within a relevant community. FED. R. EVID. 702; 526 US. at 149; United States v. Hankey, 203 F.3d 1160, 1167-68 (9th Cir. 2000). A court may also consider whether the expert developed testimony for the purposes of litigation, extrapolated from an accepted premise to an unfounded conclusion, accounted for obvious alternative explanations, exercised the same professional care as he would in his regular work, and worked in a reliable field of expertise. FED. R. EVID. 702 advisory committee's note.

A court may exclude an expert opinion on the value of a security when the calculation involves an economically implausible theory, omits an estimate of damages, or requires the jury to engage in speculation. Murphy Tugboat v. Crowley, 658 F.2d 1256, 1260-63 (9th Cir. 1981), cert. denied, 455 U.S. 1018 (1982) (excluding expert economist testimony that used an

unqualified loss figure as a benchmark); FTC v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (reasoning a conclusory, self-serving expert opinion is insufficient to create a genuine issue of material fact); McGlinchy v. Shell Chemical Co., 845 F.2d 802, 806-07 (9th Cir. 1968) (affirming summary judgment because plaintiffs made "no showing about the amount of damages" resulting in no "competent evidence from which a jury could fairly estimate damages"); Weinberg v. Whatcom County, 241 F.3d 746, 751 (9th Cir. 2001) (holding summary judgment dismissal appropriate when plaintiff failed to offer competent evidence of damages). In addition, a court may exclude expert opinion lacking factual support. In re Worlds of Wonder Securities Litig., 35 F. 3d 1407, 1425-26 (9th Cir. 1994) (excluding expert testimony that conflicted with uncontroverted facts in the record).

Although the court does not have Mr. Schenk's complete report, his testimony provides enough evidence to withstand this motion for summary judgment. Mr. Schenk worked in a reliable field of expertise, based his findings on evidence relevant to this matter, and provided results that do not require the jury to extrapolate further. Nothing indicates that Mr. Schenk failed to exercise reasonable care or used a method not accepted for economic valuation. As several factors weigh in favor of Mr. Schenk's reliability, the court should allow a jury to evaluate his testimony against the testimony of Defendants' expert.

Defendants further contend that Plaintiffs' claims only permit them to recover out-of-pocket damages, not rescissory or other damages. "Out-of-pocket" damages are "the difference between the fair value of all that the . . . seller received and the fair value of what he would have received had there been no fraudulent conduct." Affiliated Ute Citizens v. United States, 406 U.S. 128, 155 (1972). Plaintiffs correctly counter that they may recover additional damages aside from out-of-pocket damages under the California Securities Fraud,[7] Federal

---

[7] A plaintiff victimized by a California Securities Fraud Statute violation may sue for rescission or damages (any income received by the defendant on the security) if the plaintiff no longer owns the security unless the plaintiff knew of the omission or the defendant did not know of the omission. CAL. CORP. CODE § 25501.

Securities Fraud,[8] California Insider Trading,[9] fraud by a fiduciary,[10] and breach of fiduciary duty.[11]

Defendants alternatively argue that Plaintiffs may not sue under the California Securities Fraud statutes because Tony Luciani still owns the security. The California Securities Fraud statutes prohibit a person from offering to purchase a security in California by means of any communication failing to state a material fact necessary to prevent a misrepresentation. CAL. CORP. CODE § 25401. Defendants' argument is unavailing because Plaintiffs have proffered evidence of damages resulting from Tony Luciani's purchase of Plaintiffs' stake in Sav-On after he knowingly failed to inform Plaintiffs of the likely forthcoming land sale. Tony Luciani's current ownership does not matter as long as a purchase or sale occurred between the Plaintiffs and Defendants, which it did. Accordingly, Defendants' argument fails to provide grounds for summary judgment.

## IV. Conclusion

Defendants have not demonstrated that Plaintiffs failed to show evidence of damages. However, Plaintiffs have met their burden of showing sufficient evidence of economic loss to

---

[8] The Ninth Circuit awards damages for § 10(b) violations on either an out-of-pocket or rescissory theory. See Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975).

[9] For insider trading, defendant insider shall be liable for damages equal to the difference between the price at which the security was sold and the market value the security would have had if the information had been publicly disseminated, in addition to interest. CAL. CORP. CODE § 25502.

[10] Under California law, "[o]ne defrauded in the . . . sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following . . . an amount which would compensate the defrauded party for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud . . . or where the defrauded party has been induced by reason of the fraud to sell . . . an amount which will compensate him for profits or other gains which might reasonably have been earned by use of the property had he retained it." CAL. CIV. CODE Section 3343(a).

[11] For actions against a fiduciary in California, the measure of damages includes "all the detriment proximately caused." CAL. CIV. CODE § 3333; Pepitone v. Russo, 64 Cal. App. 3d 685, 688-689 (1976); Vucinich v. Paine, 803 F.2d 454, 461 (9th Cir. 1986) (allowing benefit-of-the-bargain measure of damages in breach of fiduciary duty cases involving securities).

present a jury with a question of material fact. If proven, Plaintiffs meet the statutory criteria for out-of-pocket damages as well as interest and/or rescissory damages. Depending on the jury's findings, the jury may assess the adequacy of a damage award. Therefore, the court DENIES Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 17, 2012

Jeffrey T. Miller
United States District Judge